# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ANNE HERNDON, on behalf of the UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>SCIENCE APPLICATIONS INTERNATIONAL CORPORATION, a Delaware corporation,<br><br>　　　　　　　Defendant. | CASE NO. 05CV2269-BEN (RBB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND [Doc. No. 26]** |

Plaintiff Mary Anne Herndon ("Herndon") seeks relief under the False Claims Act ("FCA"). She alleges that Defendant Science Applications International Corporation ("SAIC") committed fraud against the United States government by falsely representing in their contract negotiations and billing certifications that SAIC was in compliance with age discrimination laws. Presently before this Court is SAIC's Motion to Dismiss Herndon's First Amended Complaint ("FAC"). For the following reasons, the Court hereby **GRANTS** SAIC's Motion to Dismiss and **GRANTS** Herndon leave to amend on or before **August 10, 2007.**

## BACKGROUND

On December 13, 2005, Herndon filed her initial Complaint, which alleged *inter alia* that SAIC violated the FCA, 31 U.S.C. § 3729. On July 27, 2006, SAIC moved to dismiss Herndon's

initial Complaint for: 1) failure to adhere to the pleading requirements established by Federal Rules of Civil Procedure 9(b); and 2) for failure to state a claim under the FCA. On October 31, 2006, this Court granted SAIC's motion to dismiss pursuant to Rule 9(b). Herndon was granted leave to amend and subsequently filed the FAC.

The following facts are taken from Herndon's FAC, and only the relevant facts are stated.[1] The Court makes no factual determinations at this stage.[2]

Herndon is now sixty-two years old. She commenced her employment with SAIC in 1979. She is a well qualified employee with a Ph.D. in Computer Science and extensive experience in government contracting. Over the years, she has held high-level positions and had top-level security clearance and full access to SAIC's Intelligence Group's files. In 2004, she was promoted to Vice President-Quality in charge of process improvement for SAIC's Intelligence Group.

Herndon alleges that in March 2005 SAIC enacted a "Succession Planning Policy" within the Intelligence Group with the purpose and effect to discriminate against high-level employees over the age of fifty-five. Herndon further alleges that as part of this Succession Planning Policy, she was reviewed using the Individual Summary Forms chart, which included pictures and the dates of birth of individual employees. Additionally, she alleges that SAIC engaged in other discriminatory actions against her, including: 1) not inviting her to the Intelligence Group offsite meetings of senior staffers; 2) not approving the Process Improvement Plan she prepared for the Intelligence Group; 3) eliminating her position and advising her to look for a replacement job at SAIC (a job that did not exist); 4) excluding her from the Engineering Edge Alliance meetings; 5) not allowing her to participate in the spring 2005 International Process Research Consortium; 6) not repairing or replacing her computer; 7) ignoring her complaints of discrimination; and 8) ultimately terminating her employment with SAIC in September 2005.

Identical to her initial Complaint, the FAC contains one single claim against SAIC for fraud

---

[1] *See Schneider v. California Dept. Of Corrections*, 151 F.3d 1194, 1197 (9th Cir. 1998) ("The focus of any Rule 12(b)(6) dismissal . . . is the complaint.").

[2] *See United States v. LSL Biotechnologies*, 379 F.3d 672, 698 (9th Cir. 2004).

in government contracting under the FCA. Herndon alleges that starting on March 3, 2005,

> SAIC, expressly, impliedly, and by reference, represented to the U.S., in contracts, in billing, in certifications, in assurances, in progress reports, in the negotiation of contracts, and otherwise, that it did not and does not discriminate based on age and that it complies with non-discrimination laws . . . [when SAIC implemented its age-discriminatory Succession Planning Policy and discriminated based on age.]

She further alleges that SAIC made these false representations through information on SAIC's public website, posters posted at various areas of SAIC, presentations SAIC made to U.S. contract officials, SAIC's membership of organizations that advocate ethical practices in business activities to the U.S. government, and SAIC's various assurances of compliance. According to Herndon, the government relied on SAIC's false representations in entering into all post-March 2005 contracts and in making payments to SAIC under those contracts.

## ANALYSIS

A.  Legal Standard

SAIC moves to dismiss Herndon's FAC pursuant to the pleading requirements of Rule 9(b) and pursuant to 12(b)(6) for failure to state a claim upon which relief can be granted.

Under the FCA, it is unlawful for any person to "knowingly present[], or cause[] to be presented, a false or fraudulent claim for payment or approval" by the government or "knowingly make[], use[], or cause[] to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government." 31 U.S.C. § 3729(a). Further, the FCA allows a "*qui tam* plaintiff" (also known as a "relator") to bring a civil action for herself and the United States government, in the name of the government. *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1012 n.2 (9th Cir. 2006). In construing the scope of the FCA, Congress has emphasized that the FCA should be broadly construed to reach all types of fraud that might result in financial loss to the government. *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968); *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d. 1166, 1170 (9th Cir. 2006), *cert. denied*, 127 S. Ct. 2099 (2007).

As the FCA is an anti-fraud statute, an action brought under the FCA must fulfill the particularity requirements of Rule 9(b). *See* 31 U.S.C. § 3729(a); Fed. R. Civ. P. 9(b); *Bly-*

*Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Therefore, the plaintiff must, at a minimum, set forth the who, time, place, and specific content of each alleged act of fraud to allow the defendants to defend against the charge and not just deny that they have done anything wrong. *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Bly-Magee*, 236 F.3d at 1019; *Schreiber Distrib. Co. v. Serv-Well Furniture, Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Failure to comply with Rule 9(b) requirements is a ground for dismissal. *See Vess*, 317 F.3d at 1107.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *See* Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). Rule 12(b)(6) permits dismissal of a claim when the claim lacks a cognizable legal theory or there are insufficient facts alleged to support plaintiff's theory. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a 12(b)(6) motion for failure to state a claim, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). In other words, when all the allegations in the complaint are taken as true and construed in the light most favorable to the plaintiff, there must be enough factual allegations to raise a right to relief above the speculative level. *See id.* at 1965. If a complaint is found to fail to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

B.   False Claims Act Claims

The archetypal *qui tam* action involves a claim for payment that is literally false or fraudulent. *Hendow*, 461 F.3d at 1170. In light of the broad construction of FCA, courts have also allowed two doctrines that attach potential FCA liability to claims for payment that are not explicitly and/or independently false. *Id.* These two theories are: 1) false certification – either expressed or implied; and 2) promissory fraud. *Hendow*, 461 F.3d at 1171; *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 786-87 (4th Cir. 1999). As Herndon bases her FCA claim solely on these two theories, as opposed to the theory of overcharging the government or supplying substandard products, this Court will focus its discussion on these two theories only.

In *Hendow*, the Ninth Circuit examined at length the theories of false certification and promissory fraud, which can be summarized as follows. First, under the theory of false certification, a claim under the FCA can be false where a party merely falsely certifies compliance with a statute or regulation as a condition to government payment. *Hendow*, 461 F.3d at 1171; *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997). Second, under the "promissory fraud" or "fraud-in-the-inducement" theory, FCA liability will attach to each claim submitted to the government under a contract, when the contract or extension of government benefit was originally obtained through false or fraudulent conduct. *Hendow*, 461 F.3d at 1173; *see also United States ex rel. Main v. Okland City Univ.*, 426 F.3d 914, 916 (7th Cir. 2005), *cert. denied*, 547 U.S. 1071 (2006) (adopting a version of the promissory fraud theory). Finally, the court noted that although the promissory fraud theory is somewhat broader than the false certification theory as it does not specifically require a false statement of compliance with government regulation, the two theories are similar in substance and ultimately require the same elements. *See Hendow*, 461 F.3d at 1174. These essential elements of FCA liability under either theory are: 1) a false statement or fraudulent course of conduct, 2) made with scienter, 3) that was material, causing 4) the government to pay out money or forfeit money due. *Id.* For a cause of action under the FCA to survive a motion to dismiss, sufficient facts must be alleged to satisfy all four of these elements. *See id.*

C.  Herndon Fails to Satisfy the Rule 9(b) Requirements

As discussed above, claims brought under the FCA, like the one at issue, must satisfy the particularity pleading requirements of Rule 9(b) by setting forth the who, time, place, and specific content of each alleged act of fraud. *See* 31 U.S.C. § 3729(a); Fed. R. Civ. P. 9(b); *Vess*, 317 F.3d at 1106. In evaluating the sufficiency of a complaint, courts are required to take all material allegations in the complaint to be true and construe them in the light most favorable to the non-moving party. *Karam v. City of Burbank,* 352 F.3d 1188, 1192 (9th Cir. 2003). However, courts are not obligated to accept conclusory statements as factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Cleggy v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Applying these standards to Herndon's FAC, the Court finds that Herndon's

1  FAC fails to plead with particularity the circumstances constituting SAIC's alleged fraud. *See*
2  *United States ex rel. Lee v. Smithkline Beecham, Inc.,* 245 F.3d 1048, 1051-52 (9th Cir. 2001);
3  *Bly-Magee*, 236 F.3d at 1018-19.

4  First, Herndon fails to allege facts with particularity to support her allegation that she was
5  discriminated by SAIC. Her discrimination claim must satisfy the heightened pleading
6  requirements of Rule 9(b) because it is the basis for her fraud claim against SAIC under the FCA.
7  *See* Fed. R. Civ. P. 9(b). In her FAC, Herndon alleges that she is now 62 year old, and therefore in
8  the protected group under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §
9  623. She further alleges that SAIC implemented an age-discriminatory Succession Planning
10 Policy and that she was reviewed and subsequently terminated as part of this policy with her birth
11 date available on the review form. Other alleged discriminatory actions include excluding her
12 from certain meetings, not approving a plan she prepared for her department, and not repairing her
13 computer. These circumstances do not, however, allow the Court to make the inference that
14 Herndon was discharged as a result of employment discrimination based on age. Specifically, she
15 did not allege that she was replaced by a younger person. She did not identify other individuals in
16 the protected age group that were also discriminated. She did not allege that information
17 concerning her birth date on the review form was used in some way to eliminate her. Without
18 more, the Court is not convinced that Herndon has "nudged" her discrimination claim "across the
19 line from conceivable to plausible" to satisfy the more relaxed 8(a) pleading requirements, much
20 less the heightened 9(b) requirements. *See Bell Atlantic Corp.*, 127 S. Ct. at 1974.

21 Furthermore, Herndon fails to allege sufficiently that there were false certifications or
22 fraudulent conduct by SAIC. *See Hendow*, 461 F.3d at 1171, 1173-75; *Bly-Magee*, 236 F.3d at
23 1018-19. In her original Complaint, Herndon alleged generally that since March 2005 SAIC
24 expressly or impliedly represented to the U.S. "in contracts, in billings, in certification, in progress
25 reports, and in the negotiation of contracts . . . that it did not and does not discriminate based on
26 age and that it complies with non-discrimination laws . . . " This Court in its October 31, 2006
27 Order found this broad claim insufficient to satisfy Rule 9(b). Specifically, Herndon failed to
28 identify the types or contents of the contracts, billings, or certifications implicated in the alleged

1  fraud, the SAIC employees who executed them, or the dates and places they were executed.  The
2  Court made it clear that Herndon must set forth the who, time, place, and specific content of each
3  alleged act of fraud.  *See Vess*, 317 F.3d at 1106.

4  Despite this admonition, Herndon makes the same general allegation in her FAC as she did
5  in her initial Complaint.  Her futile attempt to further allege that "SAIC's general written
6  materials, applications, proposals, certifications, assurances" were reviewed and relied on by the
7  U.S. government fails to provide sufficient detail.  She does not describe with particularity nor
8  attach copies of any of the above materials to which she so generally refers.  She mentions posters,
9  presentations, organizational affiliations, and website content, but does not allege sufficiently to
10 satisfy the "who, when, where, and what" requirements.  *See id.*  For example, she relies on a
11 certification form that is posted on SAIC's website.  She alleges that all SAIC employees sign the
12 form annually and the form includes a representation that the signing employees will comply with
13 SAIC's standards of conduct, including the anti-age discrimination policy.  She further alleges that
14 this form on its website constitutes a representation to the government that is false.  Notably, she
15 does not allege the date and place this certification was presented to the government, nor the
16 persons present when such representation took place.  She merely alleges that SAIC's materials
17 referred the government to documents on SAIC's website, including this certification.  That is not
18 enough.  As all of the allegedly false statements lack the specificity required by Rule 9(b) and lack
19 the essential elements described by *Hendow*,[3] the Court finds Herndon fails to allege facts with
20 particularity that SAIC made false statements or engaged in a fraudulent course of conduct to
21 defraud the government.  *See* 461 F.3d at 1171-74.

---

[3] The two "Assurances of Compliance" Herndon identifies are also vague without any information regarding when and where these assurances were signed and who signed them. In fact, the two assurances of compliance certify SAIC's compliance with the Age Discrimination Act of 1975, an act that prohibits age discrimination in programs receiving Federal financial assistance but explicitly excludes employment discrimination from its scope. 42 U.S.C. §§ 6101, 6103(c)(1); *see Tyrrell v. City of Scranton*, 134 F. Supp. 2d 373, 381-82 (M.D. Pa. 2001). Therefore, these two assurances are irrelevant to Herndon's claim. Further, Herndon alleges that Ayers, a high-ranking contracting officer at SAIC, made statements concerning SAIC's no age discrimination policy at the July 28, 2005 conference. Although these statements come closer to satisfying the "who, when, where, and what" requirements, they do not rise to the level of an express or implied certification of compliance within the scope of the FCA.

1         Finally, Herndon fails to sufficiently allege that the false statements or fraudulent conduct is material to the government's decision to pay money to SAIC. *See Hopper*, 91 F.3d at 1266-67. This is necessary because violations of laws, rules, or regulations alone do not create a cause of action under the FCA. *See id.* at 1266. Rather, it is the false certification of compliance that creates liability when certification is a prerequisite to obtaining a government benefit. *Id.* at 1266. While Herndon does not need detailed factual allegations at this stage, she must allege more than mere conclusory statements, so as to raise her right to relief above the speculative level. *See Bell Atlantic Corp.*, 127 S. Ct. at 1965. Here, Herndon's sole allegation is that "the [United States] would not have entered into those contracts or made those payments had it known that SAIC was discriminating based upon age." She does not identify any laws or regulations SAIC allegedly violated that specifically require SAIC to certify compliance to enter into contracts with the government, nor does she identify any contract provisions indicating the government conditioned contracts or payments on SAIC's certification of compliance. As the Court is not required to accept conclusory statements as factual allegations, the Court is not satisfied that Herndon alleged sufficiently that the alleged false certifications or fraudulent conduct was material to the government's decision to enter into contracts with or pay money to SAIC. *See Hopper*, 91 F.3d at 1266-67 (dismissing the FCA claim because the submission of a triennial certification containing general assurances of compliance with applicable federal law was not a prerequisite for the receipt of federal funds).

## **CONCLUSION**

As the Court finds Herndon's FAC fails to plead with the particularity needed to satisfy the Rule 9(b) requirements, the FAC is hereby **DISMISSED** without prejudice. Herndon may amend her FAC on or before **August 10, 2007.**

**IT IS SO ORDERED**.

DATED: July 10, 2007

Hon. Roger T. Benitez
United States District Judge